## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **EMILY GELLATLY**<br>6768 State Route 225<br>Ravenna, OH 44266,<br><br>*Plaintiff,*<br><br>-vs-<br><br>**CHILDREN'S HOSPITAL MEDICAL CENTER OF AKRON DBA AKRON CHILDREN'S HOSPITAL; and, DOES 1-10**<br>1 Akron General Ave<br>Akron, OH 44307<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.:<br><br>JUDGE:<br><br><br><br>**COMPLAINT**<br><br>*(Jury Demand Endorsed Hereon)* |

EMILY GELLATLY by and through her attorneys, KAUFMAN, DROZDOWKI & GRENDELL, LLC, and NYE, STIRLING, HALE & MILLER, LLP, and as and for her Complaint in this matter against Defendant Children's Hospital Medical Center of Akron dba Akron Children's Hospital, and DOES 1-10, states and alleges as follows:

### NATURE OF THE ACTION

1.      Plaintiff Emily Gellatly, who is an Ohio resident living with a disability, brings this action under Title II and III of the American with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and Section 1557 of the Affordable Care Act ("ACA") to remedy Defendant, Children's Hospital Medical Center of Akron dba Akron Children's Hospital's failure to provide her with accessible access to necessary health care.

2.      Plaintiff has a mobility disability stemming from spina bifida, a birth defect in which the spine and spinal cord do not form properly. Plaintiff utilizes a wheelchair for mobility purposes. Plaintiff is limited in the major life activity of walking.

3.      Defendant Children's Hospital Medical Center of Akron dba Akron Children's Hospital, and Does 1 through 10 ("Defendant" or "Akron Children's Hospital") discriminated against Plaintiff by violating the ADA, Section 504, the ACA's accessibility guidelines, and Ohio Administrative Code Sec. 4112-5-06 ("OAC Ann. 4112-5-06") resulting in significant access barriers at Defendant's facilities. Specifically, Plaintiff experienced difficulty and risk of harm when confronted with inaccessible examination rooms, inaccessible exam tables, and inaccessible scales at Defendant's medical facilities, making it difficult, if not impossible, for Plaintiff to access her medical care with Defendant. These violations unfortunately exist due to Defendant's systemic failure to maintain accessibility features at its hospital as outlined below.

4.      Plaintiff brings this action individually to compel Defendant to cease unlawful discriminatory practices and update its policies and procedures to bring them in compliance with the law. This will ensure Plaintiff is able to access her health care and obtain full and equal enjoyment and a meaningful opportunity to participate in, and benefit from, Defendant's services. Plaintiff seeks declaratory, injunctive, compensatory, and equitable relief and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Title III of the ADA, 42 U.S.C. § 12101 et seq., Section 504 of the Rehabilitation Act, and Section 1557 of the ACA.

5.      Plaintiff has visited Defendant's facilities in Akron, Ohio, and was denied full and equal access as a result of Defendant's deliberate indifference to the accommodation requests made by persons with disabilities. Defendant denied Plaintiff equal access to its facilities because its facilities did not provide appropriate wheelchair access as required by the ADA, Rehabilitation Act, the ACA, and OAC Ann. 4112-5-06.

2

6.     By failing to make its medical center accessible to mobility impaired persons, Defendant, a public accommodation subject to Title III of the ADA, deprives disabled persons the full benefits of Defendant's health care services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III of the ADA is meant to redress.

7.     Defendant has demonstrated through its interactions with Plaintiff that it has adopted a policy and/or pattern and practice of refusing to provide accessible health care to the disabled, and that its policy, on information and belief, is based purely on financial considerations, that resulted in the violation of Plaintiff's civil rights. On information and belief, it is further alleged that Defendant's policies are not in compliance with the law and specifically failed, at all times relevant to the claims at issue, to require that primary consideration be given to the Plaintiff's request for accommodation or that the reasons why primary consideration could not be provided be documented in writing.

8.     Defendant has further demonstrated through its interactions with Plaintiff that Defendant's employees are not properly trained regarding providing appropriate accommodations under the civil rights laws stated herein, including but not limited to, providing primary consideration to requests for accommodations or documenting the reasons why those requests cannot be provided.

9.     Defendant's discrimination sends a message that it is acceptable for medical providers to adopt policies, procedures, and practices that deprive mobility-impaired individuals of the opportunity to be full partners in their receipt of health care services.

10.     The ADA expressly contemplates injunctive relief aimed at modification of a policy or practice that Plaintiff seeks in this action. In relevant part, the ADA states:

Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods…
42 U.S.C. § 12188(a)(2).

11.     Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

     a.     Defendant take all steps necessary to bring policies regarding accessibility to the disabled into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that disabled persons have access to health care;

     b.     Defendant change their policies and practices so that the accessibility barriers at Defendants' facilities do not reoccur; and

     c.     Plaintiff's representatives monitor Defendant's facilities to ensure the injunctive relief ordered pursuant to Paragraph 10.a. and 10.b. has been implemented and will remain in place.

## PARTIES

12.     Plaintiff Emily Gellatly is, and at all times relevant hereto was, a resident of Akron, Ohio. Plaintiff has spina bifida, a birth defect in which the spine and spinal cord do not form properly and uses a wheelchair for mobility.

13.     Plaintiff is a Medicare recipient, and her treatment at Defendant's facilities was, at least partially, paid for through Medicare.

14.     Defendant Children's Hospital Medical Center of Akron, doing business under the registered trade name of Akron Children's Hospital, is a not-for-profit Ohio corporation, doing business in Ohio. Defendant us the largest pediatric healthcare system in Northeast Ohio, operating two hospitals, thirty-five pediatrician offices, four urgent cares, and fifty primary and specialty locations. Defendant receives funding through Medicare.

4

15.     Plaintiff has treated at Defendant's facilities, including the pediatrician located at 1365 Corporate Drive Suite A, Hudson, Ohio, 44236 and the hospital located at One Perkins Square, Akron, Ohio, 44308-1062.

16.     Defendant's facilities are places of public accommodation as defined in 42 U.S.C. §12181(7)(F) and Defendant is subject to the requirements of the ADA, the Rehabilitation Act, and the ACA.

17.     The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as Does 1 through 10, are unknown to Plaintiff at this time. Plaintiff will amend this Complaint to allege their true names and capacities when known. Plaintiff is informed and believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in this Complaint.

18.     Plaintiff alleges that Defendants, including Doe Defendants, and each of them at all times mentioned in this Complaint were the alter egos, agents and/or employees and/or employers of their Co-Defendants and in doing the things alleged in this Complaint were acting within the course of such agency and/or employment and with the permission and consent of their Co-Defendants.

## FACTUAL BACKGROUND

### Plaintiff Has Been Denied Full and Equal Access to Defendants' Facilities

19.     Plaintiff visited Defendant's medical center located at 1365 Corporate Dr Suite A, Hudson, OH 44236, most recently on September 20, 2021. Plaintiff has also visited the main hospital at One Perkins Square, Akron, Ohio, 44308-1062, most recently on August 6, 2019 for her appointment in the Neurology Department.

20. On September 20, 2021, Plaintiff visited the medical center in Hudson, Ohio, with a suspected urinary tract infection, to get a flu shot, and discuss medicine refills. This was a part of her yearly checkup, which she performs at the Hudson office.

21. Plaintiff utilizes a wheelchair for mobility. During her treatment at Defendant's hospital in August 2021, Plaintiff encountered numerous accessibility barriers that made it difficult, if not impossible, to access her medical care. Those barriers include, but are not limited to:

a. First, when Ms. Gellatly presented for her visit on September 20, 2021, Plaintiff requested, but was not provided, accessible transfer equipment to transfer to the examination bed for the required exams. Instead, Ms. Gellatly was forced to have her mother help her transfer to the bed. At no point during any of her treatment has the medical center or hospital provided an operable Hoyer lift to assist with ingress and egress out of the examination beds. This has led to Ms. Gellatly either having all of her medical care being administered while still in her wheelchair, or having family help her transfer to the examination table.

b. Second, even when Ms. Gellatly has been able to transfer herself to the examination beds, the beds are inaccessible. Ms. Gellatly was not offered an adjustable table to accommodate a non-ambulatory person. Thus, she could not independently access her medical care –she was required to ask for help to get on the exam tables.

c. Third, there were no staff employees or other methods of operable mechanical lifts to assist with transferring Plaintiff from the examination beds to her wheelchair. The staff were untrained in accessible equipment and how to transfer someone from a wheelchair to bed and vice versa. Thus, Plaintiff either received all medical

treatment in her chair, or on another occasion, had to have her mother lift her from the chair to her bed, and all complete all subsequent transfers.

        d.        Fourth, Plaintiff has never been provided with accessible weight scales to record her weight. Plaintiff's medical records note that there is "no height or weight on file" and therefore a BMI cannot be calculated. When Plaintiff has been weighed in the past, they have had her hold herself up on the scales using nearby bars, providing wholly inaccurate numbers. Providing an accessible scale is especially important to gain

        e.        As detailed above, during her stay Plaintiff was subject to outrageous treatment and made to feel like a second-class citizen due to her disability.

22.      As a result of Defendant's failure to ensure effective accommodations for Plaintiff, and denial access and services, Plaintiff received services that were objectively substandard, inaccessible, and inferior to those provided to ambulatory patients, and was subjected to discriminatory treatment because of her disability. This is especially frustrating to Plaintiff because Defendant's hospital has been updated recently and Defendant had the ability, while updating this facility, to ensure its rooms and equipment were accessible and staff trained in accessibility, yet Defendant failed to do so.

23.      Despite this difficulty, frustration, and unequal treatment, Plaintiff will seek Defendant's health care services in the future, because of the proximity of Defendant's facilities to her home and her insurance coverage. Specifically, Plaintiff will have to return to Defendant's facilities and anticipate being required to do so in order to have additional medical care, but is deterred from doing so due to the discrimination she has faced and expect to face in the future. Furthermore, Plaintiff intends to return to Defendant's facilities to ascertain whether those facilities remain in violation of accessibility standards.

**JURISDICTION AND VENUE**

24.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

25.    This Court has personal jurisdiction over Defendant because Defendant maintains its headquarters in Pennsylvania, has sufficient minimum contacts with Pennsylvania, or has otherwise purposely availed itself of the markets in Pennsylvania through the promotion, marketing, and sale of its products and services in Pennsylvania to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Specifically, Defendant is registered to do business in Pennsylvania and has been doing business in Pennsylvania.

26.    Venue is proper under 28 U.S.C. § 1391(a) and (b)(2) because Defendant is subject to personal jurisdiction in this District. Defendant does substantial business in this District, maintains a hospital in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District. Defendant engaged in the extensive promotion, marketing, distribution, and sales of the services at issue in this District.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE ADA, TITLE III**

**[42 U.S.C. §§ 12101 et seq.]**

27.    Plaintiff restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

28.    At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, et seq. was in full force and effect and applied to Defendant's conduct.

29.    At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendant's conduct.

30.    At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of walking. Accordingly, she is considered an individual with a disability as defined under the ADA, 42 U.S.C. § 12102(2).

31.    Defendant owns, leases, and/or operates a comprehensive system of healthcare, including numerous specialty services, that are places of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F).

32.    Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations." 42 U.S.C. § 12182(a).

33.    Pursuant to Title III of the ADA and its implementing regulations, a public accommodation cannot deny participation or offer unequal or separate benefits to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A); 28 C.F.R. §§ 36.202.

34.    Pursuant to Title III of the ADA and its implementing regulations it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

35.    Defendant discriminated against Plaintiff on the basis of her disability by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or

9

accommodations of its places of public accommodation, and equal opportunity to participate in and benefit from Defendant's health care services, in violation of the ADA.

36.    As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiff and/or other mobility-impaired persons seeking Defendant's health care services.

37.    Plaintiff is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## SECOND CAUSE OF ACTION

## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

38.    Plaintiff incorporates the allegations in the preceding paragraphs, as if alleged herein.

39.    Plaintiff is an individual with a disability protected by Section 504 of the Rehabilitation Act and qualified to receive health services through Medicare. See 29 U.S.C. § 794(a); 45 C.F.R. § 84.3(j).

40.    Defendant is a recipient of federal financial assistance from the Department of Health and Human Services and is subject to Section 504 of the Rehabilitation Act and its implementing regulations. See 29 U.S.C. § 794; 45 C.F.R. § 84.3(h).

41.    Section 504 of the Rehabilitation Act provides that no qualified individual with a disability shall be subjected to disability-based discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

42.    Discrimination includes failing to "[a]fford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," or providing qualified handicapped persons with "an aid, benefit, or service that

is not as effective as that provided to others." 45 C.F.R. § 84.4(b)(1)(ii)-(iii); see 45 C.F.R. § 84.52(a)(2)-(3).

43.     Section 504 requires health programs or activities that receive federal financial assistance and that have at least fifteen employees to provide auxiliary aids and services, to individuals who are mobility-disabled and use wheelchairs. 45 C.F.R. § 84.52(b), (d).

44.     A recipient may not directly or through contractual, licensing, or other arrangements, discriminate on the basis of disability. 45 C.F.R. § 84.4(b)(1).

45.     Defendant's provision of health care constitutes a program or activity receiving federal financial assistance and, as recipients, they are required to ensure that both they and their contractors comply with Section 504 of the Rehabilitation Act.

46.     Defendant has failed and is failing to meet its obligation to provide mobility-impaired individuals an equal opportunity to use and benefit from its health care programs and activities. In failing to provide wheelchair patients like Plaintiff with accessibility, Defendant has refused to provide the auxiliary aids and services necessary to provide such patients medical treatment in an equally effective and timely manner that protects their privacy and independence.

47.     Examples of Defendant's inaccessible accommodations are listed in paragraph 21 above.

48.     Because Plaintiff and other mobility-impaired individuals cannot independently access the medical facility, they must either find and rely on third party assistance, which intrudes upon the privacy of their personal medical and financial information, or forego accessing their critical health care altogether. Defendant's failure to accommodate mobility-impaired patients in an equally effective manner puts their health at risk. This is especially pronounced in the failure to provide accessible transfer equipment to help Plaintiff transfer safely.

49.     As a result of Defendant's actions and omissions, Plaintiff and other mobility-impaired individuals have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to Defendant's health care services. If there is no change in the status quo, Plaintiff and other mobility-impaired individuals will be denied their right to access and engage fully in the provision of their health care.

50.     Defendant's failure to meet its obligations to accommodate mobility-impaired patients in an effective manner constitutes an ongoing and continuous violation of the ADA and the Rehabilitation Act, and their implementing regulations. Unless restrained from doing so, Defendant will continue to violate the ADA and the Rehabilitation Act. Unless enjoined, Defendant's conduct will continue to inflict injuries for which Plaintiff has no adequate remedy at law.

51.     Defendant's refusal to accommodate mobility-impaired patients in an equally effective manner, through the provision of alternative formats, was done intentionally or with deliberate indifference to the protected rights of Plaintiff and other mobility-impaired individuals.

52.     Plaintiff is entitled to injunctive relief, as well as reasonable attorneys' fees and costs. Plaintiff is also entitled to compensatory damages.

## THIRD CAUSE OF ACTION

## VIOLATION OF SECTION 1557 OF THE PATIENT PROTECTION AND

## AFFORDABLE CARE ACT

## [42 U.S.C. § 18116]

53.     Plaintiff incorporates the allegations in the preceding paragraphs, as if alleged herein.

54.     Since March 2010, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.,* Pub.L. 111-148. Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, and affirmed as of June 12, 2020, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services (the "Department").

55.     Defendant participates in one or more Medicare and Medicaid healthcare plans with third-party payers and is a participating provider under Medicare and Medicaid. As a result, Defendant is a covered entity under Section 1557.

56.     The implementing regulations of Section 1557 prohibit discrimination of an individual on the basis of disability, *inter alia*, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. *See* 45 C.F.R. § 92.101(a)(1). Those regulations, in pertinent part, require covered entities to:

13

A.    Take appropriate initial and continuing steps to notify beneficiaries, enrollees, applicants and members of the public:

(1)    that the covered entity does not discriminate on the basis of race, color, national origin, sex, age, or disability in its healthcare programs or activities. 45 C.F.R. §92.8 (a)(1);

(2)    that the covered entity provides appropriate auxiliary aids and services, including qualified interpreters for individuals with disabilities and information in alternate formats, free of charge and in a timely manner, when such aids and services are necessary to ensure an equal opportunity to participate to individuals with disabilities. 45 C.F.R. §92.8 (a)(2);

(3)    how to obtain aids and services. 45 C.F.R. §92.8 (a)(4);

(4)    the identification of, and contact information for, the responsible employee designated to be responsible for adoption of grievance procedures. 45 C.F.R. §92.8 (a)(5);

(5)    the availability of grievance procedures and how to file a grievance pursuant to §92.7(b). 45 C.F.R. §92.8 (a)(6); and,

(6)    how to file a discrimination complaint with the Department of Health and Human Services Office of Civil Rights. 45 C.F.R. §92.8 (a)(7).

B.    That a covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

57.    Where the regulatory provisions use the term "public entity," the term "covered entity" shall apply in its place. *See* 45 C.F.R. § 92.202(a). As applied to Section 1557 covered

14

entities, the Title II regulations require them to "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). In addition, a covered entity "shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, … companions, … an equal opportunity to participate in, and enjoy the benefits of, a service, program or activity of a [covered] entity," 28 C.F.R. § 35.160(b)(1); and "[i]n determining what types of auxiliary aids and services are necessary, a [covered] entity shall give *primary consideration* to the requests of individuals with disabilities …." 28 C.F.R. § 35.160(b)(2) (emphasis added).

58.     Defendant had a duty under Section 1557 to accommodate Plaintiff's disability by providing appropriate aids and services that would allow the Plaintiff effective, independent access to her health care treatment.

59.     Defendant's acts and omissions violated Section 1557 and its implementing regulations as Defendant did not take appropriate steps to ensure that it provided appropriate accommodations so that its treatment of Plaintiff was as effective as its treatment of others in its healthcare services, and Defendant failed to meet its obligations under Section 1557 and the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

60.     Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part, and "compensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule." *See* 45 C.F.R. § 92.301.

61.     Defendant's conduct constituted violations of Section 1557.

62.     Defendant's conduct constitutes ongoing and continued violations of Section 1557. Unless restrained from doing so, Defendant will continue to violate Section 1557. This conduct, unless enjoined, will inflict injuries on Plaintiff.

63.     Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

64.     As a direct and proximate result of the foregoing, Plaintiff suffered the loss of a civil right and she suffered great mental anguish; and she will continue so to suffer for a long time in the future; and Plaintiff was otherwise injured and damaged.

65.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OHIO LAWS AGAINST DISCRIMINATION

### [OAC ANN. 4112-5-06.]

66.     Plaintiff incorporates the allegations in the preceding paragraphs, as if alleged herein.

67.     The OAC Ann. 4112-5-01, provides that the policies intent is to "commission rules and regulations on discrimination [ ] to assure compliance with the provisions of Chapter 4112. of the Revised Code." A hospital or medical center that that offers accommodations, advantages, facilities or privileges to a substantial public is a place of public accommodation under OAC Ann. 4112-5-02.

68.     At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, et seq. was in full force and effect and applied to Defendant's conduct.

69.     Discrimination in a place of public accommodation is actionable under this section of the OAC. *See* OAC Ann. 4112-5-06.

70.     At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of walking.

71.     Defendant owns, leases, and/or operates health care services, including numerous hospital locations and pediatric centers, that are places of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F), and OAC Ann. 4112-5-02.

72.     Pursuant to OAC Ann. 4112-5-06, a public accommodation cannot deny participation or offer unequal or separate benefits to individuals with disabilities based upon their disability.

73.     Pursuant to OAC Ann. 4112-5-06, a public accommodation must construct, or alter, the facilities to adhere to the standards as described in the statute. These standards ensure the non-discrimination against disabled individuals.

74.     Defendant discriminated against the Plaintiff on the basis of her disability by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of their places of public accommodation, and equal opportunity to participate in and benefit from Defendant's health care services, in violation of § 4112-5-06.

75.     As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiff and/or other mobility-impaired persons seeking Defendant's health care services.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief:

A.      Accepting jurisdiction of this case and declaring the policies, procedures, and services of the Defendant are discriminatory and violate the Rehabilitation Act, the ADA, the ACA, and OAC Ann. 4112-5-06;

B.      Requiring the Defendant to alter the Akron Children's Hospital, to make it accessible to and usable by, individuals with disabilities to the extent required by the Rehabilitation Act, the ADA, the ACA, and OAC Ann. 4112-5-06;

C.      Directing the Defendant to evaluate and neutralize its policies, practices, and procedures toward persons with disabilities, for such reasonable time so as to allow the Defendant to undertake and complete corrective procedures at the Akron Children's Hospital;

D.      Mandating the Defendant to expeditiously make all reasonable and appropriate modifications in their policies, practices, and procedures, remove all architectural barriers at the Akron Children's Hospital that are readily achievable and technically feasible as required by law, and to take all such steps as are reasonable and necessary to ensure that persons with disabilities are no longer excluded, denied services, segregated, or otherwise treated differently and discriminated against;

E.      Awarding reasonable attorneys' fees, expert fees, costs, and expenses to Plaintiff;

F.      Awarding compensatory damages for the intentional discrimination, humiliation, distress, and anxiety suffered by Plaintiff, pursuant to Section 504 of the Rehabilitation Act, Section 1557 of the ACA, and OAC Ann. 4112-5-06.

G.      Awarding such other and further relief as the Court deems necessary, just, and proper; and,

18

H.      Retaining jurisdiction of this case until the Defendant has fully complied with the

orders of this Court.


Dated: April 21, 2022            Respectfully Submitted,


                                 /s/ Evan T. Byron
                                 Evan T. Byron, Esq. (Ohio Bar No. 0081100)
                                 etb@kdglegal.com
                                 **KAUFMAN, DROZDOWSKI &
                                 GRENDELL, LLC**
                                 29525 Chagrin Blvd, Suite 250
                                 Pepper Pike, Ohio 44122
                                 Telephone: (440) 462-6500

                                 Benjamin J. Sweet
                                 ben@nshmlaw.com
                                 **NYE, STIRLING, HALE & MILLER, LLP**
                                 1145 Bower Hill Road, Suite 104,
                                 Pittsburgh, PA 15243
                                 Phone: (412) 742-0631

                                 Jonathan D. Miller (CA Bar No. 220848)
                                 Alison Bernal (CA Bar No. 264629)
                                 jonathan@nshmlaw.com
                                 **NYE, STIRLING, HALE & MILLER, LLP**
                                 33 W. Mission Street, Suite 201
                                 Santa Barbara, CA 93101
                                 Phone: (805) 963-2345

                                 *Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff EMILY GELLATLY hereby demand a trial by jury of all claims so triable in the above-referenced matter.

Dated: April 21, 2022                    Respectfully Submitted,

 /s/ Evan T. Byron
Evan T. Byron, Esq. (Ohio Bar No. 0081100)
etb@kdglegal.com
**KAUFMAN, DROZDOWSKI &**
**GRENDELL, LLC**
29525 Chagrin Blvd, Suite 250
Pepper Pike, Ohio 44122
Telephone: (440) 462-6500

Benjamin J. Sweet
ben@nshmlaw.com
**NYE, STIRLING, HALE & MILLER, LLP**
1145 Bower Hill Road, Suite 104,
Pittsburgh, PA 15243
Phone: (412) 742-0631

Jonathan D. Miller (CA Bar No. 220848)
Alison Bernal (CA Bar No. 264629)
jonathan@nshmlaw.com
**NYE, STIRLING, HALE & MILLER, LLP**
33 W. Mission Street, Suite 201
Santa Barbara, CA 93101
Phone: (805) 963-2345

*Attorneys for Plaintiff*